UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER JULIAN HUMPHERY, | Case No.: 25-cv-00813-DMS-KSC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE PUNITIVE DAMAGES** |
| CITY OF SAN DIEGO; LIAM COATS; et al., | |
| Defendants. | |

Pending before the Court is City Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint ("TAC") and City Defendants' Motion to Strike Punitive Damages. (City Defendants' Motion ("Defs.' Mot."), ECF No. 40).  Plaintiff filed an Opposition, (Plaintiff's Opposition ("Opp'n"), ECF No. 41), and City Defendants filed a Reply, (City Defendants' Reply ("Reply"), ECF No. 43).  For the following reasons, City Defendants' Motion to Dismiss is **GRANTED** and City Defendants' Motion to Strike Punitive Damages is **DENIED**.

## I.     BACKGROUND

Plaintiff Christopher Julian Humphery, proceeding pro se, sues for alleged constitutional and state-law violations by the City of San Diego ("the City"), thirteen police officers from the San Diego Police Department ("the Officers"), and a private individual, Ja' Juan Henderson.  (TAC, ECF No. 32).  On December 18, 2023, Plaintiff alleges that

Defendant Henderson "made unsolicited sexual contact with Plaintiff at Plaintiff's residence." (*Id.* at 2). In response, Plaintiff "verbally and physically rebuffed the advance," prompting Defendant Henderson to contact the police. (*Id.* at 2–3). When the Officers arrived at the scene, they allegedly arrested Plaintiff despite his explanation that "he had responded physically in reaction to [Defendant Henderson's] assault." (*Id.* at 3). According to Plaintiff, he "was arrested without any officer informing him of the reason for the arrest" and "administered an unidentified pill without being advised of its nature, purpose, or potential side effects." (*Id.*).

A few months later, on August 18, 2024, Plaintiff alleges that after encountering Defendant Henderson at a birthday celebration where Plaintiff "made clear he no longer wished to associate with Henderson," Defendant Henderson "came to Plaintiff's home[,] . . . attempted to slash Plaintiff's tires, [and threw] items through [Plaintiff's window]" while Plaintiff was asleep. (*Id.*). Plaintiff awoke, called the police, exited the home, and was "physically assaulted by Henderson." (*Id.*). Plaintiff returned inside the home and called the police again to "report the assault" while Defendant Henderson remained outside. (*Id.*). When the Officers arrived at the scene, Plaintiff informed the Officers of "the ongoing harassment," and the Officers issued citations to Plaintiff and Defendant Henderson. (*Id.*). Defendant Henderson faced no charges despite Plaintiff's efforts to facilitate an investigation. (*Id.* at 4). The Officers allegedly failed to collect evidence, verify Defendant Henderson's false statements regarding Plaintiff's methamphetamine use and the existence a romantic relationship between the two parties, make an arrest, or protect Plaintiff. (*See id.* at 4–5). Plaintiff alleges that both incidents "involved malicious false accusations, discriminatory bias based on Plaintiff's perceived gender and sexual identity, and deliberate failure by law enforcement to protect Plaintiff or acknowledge his status as a victim." (*Id.* at 2).

Plaintiff asserts twenty-eight causes of action. Claims One through Nine are against the City:

1. *Monell* (42 U.S.C. § 1983)

2.  Negligent Hiring, Retention, Training, and Supervision (California law)

3.  Violation of the Fourteenth Amendment's Due Process Clause (42 U.S.C. § 1983)

4.  Deliberate Indifference to Constitutional Rights (42 U.S.C. § 1983)

5.  Deprivation of Liberty without Probable Cause or Legal Justification (42 U.S.C. § 1983)

6.  Malicious Prosecution (42 U.S.C. § 1983 and California law)

7.  Violation of the Bane Act (California law)

8.  Intentional Infliction of Emotional Distress (California law)

9.  Negligent Infliction of Emotional Distress (California law)

(*Id.* at 4–8). Claims Ten through Twenty are against the Officers:

10. False Arrest and Unlawful Seizure (42 U.S.C. § 1983)

11. Warrantless Search and Seizure (42 U.S.C. § 1983)

12. Malicious Prosecution (42 U.S.C. § 1983 and California law)

13. Violation of the Fourteenth Amendment's Equal Protection Clause (42 U.S.C. § 1983)

14. Deliberate Indifference to Constitutional Rights (42 U.S.C. § 1983)

15. Deprivation of Liberty without Probable Cause or Legal Justification (42 U.S.C. § 1983)

16. Failure to Protect (42 U.S.C. § 1983)

17. Conspiracy to Violate Civil Rights (42 U.S.C. § 1983)

18. Violation of the Bane Act (California law)

19. Intentional Infliction of Emotional Distress (California law)

20. Negligent Infliction of Emotional Distress (California law)

(*Id.* at 8–12). City Defendants seek to dismiss all twenty claims.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the legal

sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## III.    DISCUSSION

### A. 42 U.S.C. § 1983—Officers

Plaintiff's tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, and seventeenth causes of action are brought against the Officers under 42 U.S.C. § 1983. (TAC 8–11). To state a claim for relief under § 1983, a plaintiff must sufficiently allege "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law."

*Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The Court will group these claims according to the federal right at issue.

      a. <u>Fourth Amendment</u>

As best as the Court can decipher, Plaintiff's tenth (false arrest), eleventh (warrantless search and seizure), and fifteenth (deprivation of liberty without probable cause or legal justification) causes of action appear to be premised on the Officers' violation of the Fourth Amendment. (TAC 8, 10).

      i. *Unlawful Detention and Arrest*

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." *Id.* at 966; *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001) ("Probable cause exists when there is a fair probability or substantial chance of criminal activity."). "If probable cause exists, it provides a complete defense." *Est. of Silva by and through Allen v. City of San Diego*, 2022 WL 17740970, at *5 (S.D. Cal. Dec. 16, 2022) (citing *Hutchinson v. Grant*, 796 F.2d 288, 290 (9th Cir. 1986)). "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part." *Brinegar v. United States*, 338 U.S. 160, 176 (1949).

Plaintiff asserts that he was arrested and cited without probable cause. (TAC 8, 10). City Defendants argue that Plaintiff has failed to provide sufficient facts establishing a lack of probable cause. (Defs.' Mot. 9). The Court agrees with City Defendants.

As for the December 18, 2023, incident, the TAC alleges that Defendant Henderson called the police and Plaintiff subsequently explained to the Officers that he had acted in self-defense. (TAC 3). Rather than believing Plaintiff's version of events, the Officers allegedly arrested him for assault with a deadly weapon. (*Id.*). While Plaintiff contends

that his claim of self-defense eliminated any reasonable finding of probable cause, "the weight of authority supports the conclusion that [P]laintiff's assertion of self-defense does not mean that there is not probable cause." *Pallas v. Accornero*, 2019 WL 2359215, at *4 (N.D. Cal. June 3, 2019); *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) ("The mere existence of some evidence that could suggest self-defense does not negate probable cause."). The Court thus cannot conclude that the Officers lacked probable cause based on Plaintiff's representation that he acted in self-defense. To the contrary, Plaintiff admitted to the Officers that he had become physical with Defendant Henderson to rebuff the assault. (TAC 3) ("Plaintiff informed the [O]fficers that Henderson had sexually assaulted him, and that he had responded physically in reaction to that assault.").

The same analysis applies to the August 18, 2024, incident, where following the receipt of competing stories between Plaintiff and Defendant Henderson about their physical fight, the Officers allegedly issued them both citations. (*Id.*). Plaintiff again alleges that there was no probable cause to cite him because he "informed the [O]fficers of the ongoing harassment" and defended himself against Defendant Henderson's assault. (*Id.*). However, the Officers were "not required to determine the relative culpability of the two men, or whether one was acting in self-defense, in order to issue citations . . . to both." *Verdugo v. Manker*, 2009 WL 1972909, at *6 (C.D. Cal. July 6, 2009), *aff'd*, 412 F.App'x 937 (9th Cir. 2011). Considering the facts alleged in the TAC, the Officers could have reasonably believed that both Plaintiff and Defendant Henderson had been physically violent towards each other, which establishes probable cause. *See id.* ("Based on the information before him, Sergeant Manker could have reasonably believed that plaintiff and Canada had each committed battery against the other. Thus, Sergeant Manker had probable cause for citing plaintiff, and plaintiff's false arrest claim fails as a matter of law."); *Sudderth v. City & Cnty. of San Francisco*, 2001 WL 764929, at *5 (N.D. Cal. June 27, 2001) (finding probable cause despite allegation of self-defense because "plaintiff confirmed that she had used force against Dubbin during their altercation").

1    Accordingly, the Court **GRANTS** City Defendants' Motion to Dismiss Plaintiff's

2   tenth and fifteenth causes of action.

3                      ii.  *Unlawful Search*

4          The Fourth Amendment protects against "unreasonable searches."  U.S. Const.

5   amend. IV.  "[S]earches typically must be conducted pursuant to a warrant issued by an

6   independent judicial officer.  However, there are exceptions to this general rule, including

7   the 'automobile exception,' under which a warrantless search of a vehicle is permitted 'if

8   there is probable cause to believe that the vehicle contains evidence of a crime.'"  *United*

9   *States v. Faagai*, 869 F.3d 1145, 1149–50 (9th Cir. 2017) (quoting *United States v. Brooks*,

10  610 F.3d 1186, 1193 (9th Cir. 2010)) (internal citations omitted).  "[O]fficers may [also]

11  conduct a warrantless 'vehicle search incident to a recent occupant's arrest' when 'it is

12  reasonable to believe that evidence of the offense of arrest might be found in the vehicle.'"

13  *United States v. Salas*, 766 F.Supp.3d 1069, 1074 (S.D. Cal. 2025) (quoting *Arizona v.*

14  *Gant*, 556 U.S. 332, 335 (2009)).

15         Plaintiff alleges that during the December 18, 2023, incident, the Officers conducted

16  a search of his vehicle "without a warrant, probable cause, or Plaintiff's consent."  (TAC

17  8).  He includes no other facts with respect to the search.[1]  (*See generally id.*).  As

18  articulated by City Defendants, there is no "context regarding the location of the search,

19  the time of the search, the stated purpose of the search, [or] what . . . was found during the

20  search." (Defs.' Mot. 16).  The TAC thus contains insufficient factual content for the Court

21  to evaluate the constitutionality of the search.  Plaintiff's eleventh cause of action is

22  **DISMISSED**.

23               b.  Malicious Prosecution

24         Plaintiff's twelfth cause of action is malicious prosecution under § 1983 and state

25  law. (TAC 8–9).  Plaintiff alleges that "[the Officers] initiated criminal prosecution against

26

27  ─────────────────────────

28  [1] There is no mention of the search of Plaintiff's vehicle in the "Factual Allegations" section of the TAC. (*See* TAC 2–4).

7

Plaintiff based on unverified and knowingly false allegations, despite being informed that Plaintiff had reported a sexual assault." (*Id.* at 9). City Defendants assert that Plaintiff has failed to allege the elements of a malicious prosecution claim. (Defs.' Mot. 10). The Court agrees with City Defendants.

"Federal courts rely on state common law for elements of malicious prosecution." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019). "California law requires a plaintiff claiming malicious prosecution to establish 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor; (2) was brought without probable cause; and (3) was initiated with malice.'" *Id.* (quoting *Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863, 871 (1989)). To state a cause of action under § 1983, the plaintiff must also show that the defendant prosecuted him "for the purpose of denying h[im] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995). "Although being lawfully arrested on a criminal charge may be considered the institution of a criminal proceeding, where the arrest is not a valid one, an action for malicious prosecution will not lie unless some further step is taken, such as bringing the accused before a magistrate for determination whether he is to be held." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 919–20 (9th Cir. 2012) (internal citation and quotation marks omitted). A malicious prosecution claim fails "[i]f there is nothing more than the false arrest and the accused is released without any further proceeding." *Id.* at 920.

The TAC fails to state that criminal proceedings were initiated against Plaintiff. Plaintiff alleges only that he was arrested without probable cause on December 18, 2023, and that Officers issued a citation against him on August 18, 2024. (TAC 3) ("Despite being the victim, Plaintiff was arrested without any officer informing him of the reason for the arrest. He was transported to holding, booked, and not made aware of the charge— assault with a deadly weapon—until hours later."); (*see also id.*) ("Officers issued both parties citations."). He does not allege that the prosecutor formally filed charges, that he

8

was arraigned, or that he appeared in court. Therefore, the Court **GRANTS** City Defendants' Motion to Dismiss Plaintiff's malicious prosecution claim against the Officers.[2] *See Lacey*, 693 F.3d at 920 ("Although Lacey and Larkin were arrested, they have not alleged that any process resulting in the initiation of criminal proceedings followed this arrest. Accordingly, Lacey has not identified any action taken by Wilenchik that can properly be characterized as a prosecution. He has simply recast the false arrest claim as a claim for malicious prosecution, which he may not do. The district court properly dismissed the malicious prosecution claims."); *Sarafyan v. Elson*, 2019 WL 3308770, at *6 (C.D. Cal. Feb. 21, 2019) ("The Court is inclined to dismiss the malicious prosecution claim because Plaintiff has not alleged that, beyond her arrest, the Defendants took any further actions against her."); *Roe v. City of Portland*, 2024 WL 3888705, at *13 (D. Or. Aug. 19, 2024) ("Further, he has not pled that he ever appeared in court following his arrest. Accordingly, the Court concludes that Roe's allegations sound in false arrest, not malicious prosecution.").

### c. Fourteenth Amendment

The Court interprets Plaintiff's thirteenth (equal protection) and fourteenth (deliberate indifference to constitutional rights) causes of action as alleging violations of the Fourteenth Amendment. (TAC 9–10).

#### i. *Equal Protection*

To prevail under the Equal Protection Clause of the Fourteenth Amendment, "a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007). "To establish a discriminatory effect [based on a protected class], the claimant must show that similarly situated individuals of a different [class] were not prosecuted." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). To

---

[2] Another ground to dismiss Plaintiff's malicious prosecution claim is that Plaintiff failed to allege that the Officers acted without probable cause. *See supra* III.A.a.i.

establish a discriminatory purpose, the claimant must show that "the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979).

Plaintiff alleges that the Officers' "fail[ure] to charge [Defendant] Henderson" and treatment towards Plaintiff "as the aggressor" were the product of "discriminatory bias based on Plaintiff's perceived gender and sexual identity" in violation of the Equal Protection Clause.  (TAC 2, 9).  City Defendants argue that Plaintiff fails to identify any similarly situated individual of a different class and necessarily fails to articulate how this other class was treated differently than Plaintiff.  (Defs.' Mot. 17).  The Court agrees with City Defendants.

Although Plaintiff identifies himself as "a Black gay/bisexual man," (TAC 1), he has not alleged the existence of similarly situated individuals from a different class for comparison purposes.  Plaintiff does not specify whether Defendant Henderson belongs to a different class than him.  Even if he had, the TAC alleges similar treatment insofar as they *both* received citations during the August 18, 2024, incident.  (*Id.* at 3).  There are also insufficient facts to infer a causal connection between Plaintiff's status in a protected class and the Officers' actions.  *See Feeney*, 442 U.S. at 279 ("[N]othing in the [statutory history] demonstrates that this preference for veterans was originally devised or subsequently re-enacted because it would accomplish the collateral goal of keeping women in a stereotypic and predefined place in the Massachusetts Civil Service.").  As such, the Court **GRANTS** City Defendants' Motion to Dismiss Plaintiff's thirteenth cause of action.

### ii.  *Deliberate Indifference*

In his fourteenth cause of action, Plaintiff asserts that "Defendants demonstrated deliberate indifference to Plaintiff's constitutional rights".  (TAC 9–10).  City Defendants respond that this claim is too vague.  (Defs.' Mot. 8–9).

"Deliberate indifference" is not a recognized cause of action, but rather a standard of fault used to establish liability under certain claims, originally those brought under §

1983 by pretrial detainees for Eighth Amendment violations.  *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  While Plaintiff brings this cause of action under § 1983, § 1983 does not create substantive rights; it provides only a mechanism for enforcing rights conferred by the Constitution or federal law.  *Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600, 617 (1979) ("§ 1983 by itself does not protect anyone against anything.").  Therefore, "[t]he first step in [bringing a claim under § 1983] is to identify the specific constitutional right allegedly infringed."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff's claim only broadly references his "constitutional rights" and "federally protected rights" while failing to identify a specific constitutional right allegedly infringed.  (*See* TAC 9–10).  Without specifying the basis of the claim, Plaintiff has not provided the Officers with a fair opportunity to defend themselves.  Thus, the Court **DISMISSES** Plaintiff's fourteenth cause of action.

> d.  Failure to Protect

Plaintiff's sixteenth cause of action alleges that the Officers failed to protect Plaintiff from Defendant Henderson in violation of Plaintiff's "constitutional right to personal security under the Due Process Clause of the Fourteenth Amendment."  (TAC 10).

The Supreme Court has ruled that "a [s]tate's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  *Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989) (holding that social workers of county social services agency had no duty to protect child against permanently debilitating physical abuse by child's father while child was in father's custody despite being continuously notified of abuse from credible sources for over two years leading up to event).  The Ninth Circuit has applied this rule to law enforcement officers.  *See e.g.*, *Whitney v. City of Tacoma*, 2021 WL 4844215, at *1 (9th Cir. Oct. 18, 2021) ("There is no cognizable obligation under the Fourteenth Amendment or any other constitutional provision . . . for a law enforcement officer to protect an individual from harm by a private party.").  Beyond the general rule, exceptions include: (1) when the state

or its representatives created the danger the plaintiff faced, *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992), or (2) when the plaintiff is in the state's custody and is thereby prevented from protecting himself or herself, *Deshaney*, 489 U.S. at 198.

Plaintiff alleges that the Officers knew or should have known of Plaintiff's prior violent encounters with Defendant Henderson and that they failed to take any protective action, thereby causing Plaintiff's assault on August 18, 2024. (TAC 10). Under Ninth Circuit caselaw, however, the Officers cannot be found liable for any subsequent physical assault by Henderson—or any private actor—absent allegations that the state or the Officers either created the danger or held Plaintiff in custody. Because the TAC is devoid of such allegations, the Court **DISMISSES** Plaintiff's sixteenth cause of action.

> e. Civil Conspiracy to Violate Civil Rights

Plaintiff's seventeenth cause of action is that the Officers engaged in a civil conspiracy to violate his civil rights. (TAC 10–11). Plaintiff contends that the Officers "conspired—explicitly or implicitly—to deprive Plaintiff of his constitutional rights by: [s]uppressing exculpatory evidence; [i]gnoring multiple credible witness accounts; [and] [m]isrepresenting facts to justify Plaintiff's arrest, citation, and classification as a suspect." (*Id.* at 11). City Defendants respond that the TAC fails to plead facts that meet any element of a claim for civil conspiracy. (Defs.' Mot. 9).

"To prove conspiracy . . . under § 1983, an agreement or meeting of minds to violate the [plaintiff's] constitutional rights must be shown." *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989). The plaintiff "must show (1) an agreement between the defendants to deprive the plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation." *Davis v. Powell*, 901 F.Supp.2d 1196, 1217 (S.D. Cal. 2012). These elements must be alleged with particularity: "[v]ague and conclusory allegations of official participation in civil rights violations are not

sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff's allegations are conclusory.  While an "agreement need not be overt and can be inferred from the actions of the [Officers]", *Davis*, 901 F.Supp.2d at 1217, Plaintiff includes no facts for the Court to infer the existence of an agreement.  Further, because all causes of action alleging a constitutional violation have been dismissed, Plaintiff has failed to "adequately plead an underlying constitutional violation." *Oceanside Organics v. Cnty. of San Diego*, 341 F.Supp.3d 1129, 1145 (S.D. Cal. 2018).  Accordingly, the Court **GRANTS** City Defendants' Motion to Dismiss Plaintiff's conspiracy claim.  *See Woodrum*, 866 F.2d at 1126 ("[T]he Woodrums could allege no specific facts to show any agreement between Rosson and any of the named defendants . . . Woodrum's conclusory allegations that Rosson and the social workers conspired do not support a claim for violation of his constitutional rights under § 1983.").

**B.  42 U.S.C. § 1983—The City (*Monell*)**

Plaintiff's first cause of action is a *Monell* claim against the City.  (TAC 4–5). Plaintiff asserts that the City "maintained unconstitutional customs, policies, and practices that were the moving force behind the violations of Plaintiff's constitutional rights." (*Id.* at 4).  City Defendants argue that the "TAC contains only boilerplate, conclusory allegations of undefined 'customs, policies and practices.'" (Defs.' Mot. 7).

A local government cannot be vicariously liable under § 1983 based on the acts of its employees; but a local government can be liable for deprivations of constitutional rights resulting from its formal policies, customs, or longstanding practices.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–93 (1978).  To state a § 1983 claim under the *Monell* standard, a plaintiff must show: "(1) he was deprived of a constitutional right; (2) the [local government] had a policy; (3) the policy amounted to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).  The plaintiff must show a "direct causal link" between the policy and the

constitutional deprivation. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc).

"A 'policy' is 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)) (alteration in original). A plaintiff can satisfy *Monell*'s policy requirement in one of three ways. First, a plaintiff can show that the local government acted "'pursuant to an expressly adopted official policy.'" *Gordon v. Cnty. of Orange* (*Gordon II*), 6 F.4th 961, 973 (9th Cir. 2021) (quoting *Thomas v. Cnty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014)). Second, "a public entity may be held liable for a 'longstanding practice or custom.'" *Id.* (quoting *Thomas*, 763 F.3d at 1170). Third, a plaintiff can show that "'the individual who committed the constitutional tort was an official with final policy-making authority,'" or that "such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 974 (quoting *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled on other grounds by Castro*, 833 F.3d at 1070).

As previously discussed, Plaintiff has not adequately alleged that he was deprived of a constitutional right. Thus, Plaintiff's *Monell* claim fails for the same reason as his § 1983 individual capacity claims—failure to state a violation of a constitutional right. *See Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights.").

Plaintiff has further failed to state facts meeting the second element of a *Monell* claim—the existence of a policy. Plaintiff alleges that the City maintains the following policies: "(a) [f]ailure to properly train or supervise officers in the handling of sexual assault complaints, victim identification, probable cause determinations, and dual-complaint bias protocols; (b) [t]olerati[on] [of] false police reports without adequate investigation; (c) [f]ail[ure] to discipline officers for discriminatory or negligent conduct,

including biased-based policing, unlawful searches, and the misclassification of victims; [and] (d) exonerat[ion] [of] officers despite credible complaints of misconduct." (TAC 4–5). However, Plaintiff does not include sufficient factual content for the Court to infer that these policies were expressly adopted or that the Officers responsible for Plaintiff's alleged injuries had policy-making capacity. (*See generally* TAC). Additionally, while Plaintiff alleges that his complaint of misconduct was dismissed by the Internal Affairs Unit, "a plaintiff must allege more than a one-time incident" to succeed in showing a longstanding practice or custom. *Morris v. City of Los Angeles*, 2024 WL 1256276, at *3 (C.D. Cal. Mar. 25, 2024); *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021) ("However, one instance of County employees violating the constitutional rights of parents and children is insufficient to demonstrate a custom supporting *Monell* liability."); *Monell*, 436 U.S. at 691 (for unwritten policy or custom to form basis of claim, it must be so "persistent and widespread" that it constitutes "permanent and well settled" practice). Accordingly, the Court **GRANTS** City Defendants' Motion to Dismiss Plaintiff's *Monell* claim.

*Monell* is the only theory through which a local government can be held liable under § 1983. *See Black v. City of Blythe*, 562 F.Supp.3d 820, 834 (C.D. Cal. 2022) ("First, to the extent that Mr. Black seeks to hold the City vicariously liable under 42 U.S.C. § 1983 for its officers' actions, such a claim is impermissible. Under [*Monell*], municipalities cannot be sued under a theory of respondeat superior for injuries inflicted by its employees or agents."); *see also Harris*, 489 U.S. at 385 ("In *Monell* . . . , we decided that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983."). Because Plaintiff has not sufficiently pleaded a *Monell* claim, his third (violation of Fourteenth Amendment's Due Process Clause), fourth (deliberate indifference to constitutional rights), fifth (deprivation of liberty without probable cause), and sixth (malicious prosecution) causes of action are also **DISMISSED**.

**C. Negligent Hiring, Retention, Training, and Supervision (The City)**

Plaintiff's second cause of action is for the City's negligent hiring, retention, training, and supervision of its employees.  (TAC 5).  While Plaintiff's basis for this claim is common law negligence, he does not specify whether he is seeking to hold the City accountable on a theory of direct or vicarious liability.  (*Id.*).  City Defendants argue that Plaintiff fails to state a claim under both theories.  (Defs.' Mot. 7).  The Court agrees.

A theory of direct liability does not exist under California law: "courts have repeatedly held that 'a direct claim against a governmental entity asserting negligent hiring and supervision, when not grounded in the breach of a statutorily imposed duty owed by the entity to the injured party, may not be maintained.'"  *French v. City of Los Angeles*, 2021 WL 6752229, at *6 (C.D. Cal. Jan. 8, 2021) (quoting *De Villers v. Cnty. of San Diego*, 156 Cal.App.4th 238, 251 (2007)); *see also Lopez v. Williams*, 2017 WL 10560529, at *9 (C.D. Cal. Aug. 15, 2017) ("Defendants are correct that there is no statute imposing direct liability on public entities for negligent training, hiring, and supervision practices[.]").

A theory of vicarious liability, on the other hand, has been permitted by the California Supreme Court.  *French*, 2021 WL 6752229, at *7 (citing *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal.4th 861, 878 (2012)).  Under the California Government Code, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee".  Cal. Gov't. Code § 815.2.  For an employee to be held liable for negligence, the plaintiff must allege "(a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury."  *Evan F. v. Hughson United Methodist Church*, 8 Cal.App.4th 828, 834 (1992) (internal quotation marks omitted).  While there is no general legal duty to use due care under California law, "courts have carved out an exception to this rule in cases in which the defendant stands in some special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of that conduct".  *Tarasoff v. Regents of Univ. of*

*California*, 17 Cal.3d 425, 435 (1976).  Even if there is a special relationship, vicarious liability is unlikely to result "[u]nless the individual alleged to be negligent in a hiring or retention decision knew or should have known of the dangerous propensities of the employee who injured the plaintiff".  *C.A.*, 53 Cal.4th at 878.

For Plaintiff's second cause of action to survive, Plaintiff must allege the existence of a special relationship.  He does not.  While courts have recognized "a duty of care to individuals who may be subjected to police officers' unreasonable use of force", *French*, 2021 WL 6752229, at *8, the TAC includes no allegations of police force.  It also fails to include allegations of the City's knowledge.  (*See generally* TAC).  Plaintiff alleges only that the City assigned unqualified employees to respond to the December 2023 and August 2024 incidents.  (*Id.* at 5).  Without more, the City cannot be vicariously liable.  *See Kendrick v. Cnty. of San Diego*, 2018 WL 1316618, at *11 (S.D. Cal. Mar. 14, 2018), *aff'd*, 776 F.App'x 530 (9th Cir. 2019) ("Here, Plaintiff does not allege a special relationship existed between Gary and Sheriff Gore.  Therefore, Sheriff Gore cannot be personally liable for a claim of negligent hiring and supervision and consequently, the County cannot be vicariously liable under California Government Code section 815.2."); *Est. of Umana by & through B.U. v. Nat'l City*, 2023 WL 5344305, at *10 (S.D. Cal. Aug. 17, 2023) ("Moreover, Plaintiffs have not alleged that any of the unknown supervisors knew or should have known about the dangerous propensities of the Officer Defendants.  Accordingly, the Court concludes that Plaintiffs have not alleged a claim for negligent hiring, supervision, training and/or discipline[.]").  The Court **GRANTS** City Defendants' Motion to Dismiss Plaintiff's negligent hiring, retention, training, and supervision claim.

### D. Infliction of Emotional Distress

Plaintiff's eighth and nineteenth causes of action seek to hold the City and the Officers liable for intentional infliction of emotional distress ("IIED").  (TAC 7, 12).  Plaintiff's ninth and twentieth causes of action seek to hold them liable for negligent infliction of emotional distress ("NIED").  (*Id.* at 7–8, 12).

a. <u>Intentional Infliction of Emotional Distress</u>

"A cause of action for intentional infliction of emotional distress exists when there is '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering [of] severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001 (1993)). "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'" *Id.* at 1050–51 (quoting *Potter*, 6 Cal.4th at 1001). "[T]he defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.'" *Id.* at 1051 (quoting *Potter*, 6 Cal.4th at 1001). Even if the first two elements are met, a plaintiff cannot succeed on an IIED claim unless his emotional distress was "'of such substantial . . . or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" *Id.* (quoting *Potter*, 6 Cal.4th at 1004) (alteration in original).

Plaintiff argues that City Defendants "engaged in extreme and outrageous conduct" by ignoring Plaintiff's reports of sexual assault, misclassifying Plaintiff as a suspect rather than as a victim, and declining investigation of Defendant Henderson's alleged harassment of Plaintiff. (TAC 7, 12). While Plaintiff has recited the elements of an IIED claim in the TAC, he has not met the high bar of alleging that the Officers deviated from the bounds usually tolerated in a civilized community. During both incidents, the Officers took testimony from Plaintiff and listened to his version of events. (*Id.* at 3–4). The TAC, contrary to Plaintiff's conclusory allegation, does not suggest that the Officers wholly ignored Plaintiff. Additionally, to plead an IIED claim, Plaintiff must do more than "vaguely lump all [D]efendants together without providing any factual allegations that specify separate acts of [each] that would subject them to liability" and generally state that he suffered from emotional distress. *Lewis v. Cnty. of San Diego*, 2014 WL 3527719, at *6 (S.D. Cal. July 15, 2014); *see also Godshall v. Cnty. of San Diego*, 2019 WL 2085965,

at *3 (S.D. Cal. May 13, 2019) (dismissing IIED claim because "Plaintiffs have not alleged any facts showing that they have suffered severe emotional distress, but instead merely state that 'Plaintiffs suffered severe emotional distress[,] and the outrageous conduct was the cause of the emotional distress suffered by Plaintiffs'").   Therefore, the Court **GRANTS** City Defendants' Motion to Dismiss Plaintiff's eighth and nineteenth causes of action.

      b.  <u>Negligent Infliction of Emotional Distress</u>

      NIED is not an independent tort doctrine.  *See Potter*, 6 Cal.4th at 984.   Rather, NIED is a form of negligence which requires Plaintiff to allege (1) a legal duty to use due care; (2) a breach of such duty; (3) legal cause; and (4) damages caused by the negligent breach.  *Friedman v. Merck & Co.*, 107 Cal.App.4th 454, 463 (2003).

      In support of his NIED claims, Plaintiff alleges the same conduct described in the IIED causes of action, as well as an alleged failure by City Defendants to protect Plaintiff from Defendant Henderson.  (TAC 7–8, 12).  Plaintiff adds that the Officers "owed Plaintiff a duty of care to respond appropriately," but subsequently breached that duty and caused Plaintiff to suffer "emotional distress, reputational harm, and prolonged psychological suffering."  (*Id.* at 12).  Again, City Defendants contend that the facts alleged are only conclusory allegations of negligence—particularly relating to the "breach" element. (Defs.' Mot. 15).

      The Court finds that the alleged failure to investigate does not plausibly support a finding of breach because, under California Government Code § 818.2, "[a] public entity is not liable for any injury caused by . . . failing to enforce any law," and, under California Government Code § 820.4, "[a] public employee is not liable for his . . . omission, exercising due care, in the . . . enforcement of any law."  The alleged repeated failure by the Officers to intervene and prevent Defendant Henderson from assaulting Plaintiff also does not plausibly support a finding of breach because, under California Government Code § 845, "[n]either a public entity nor a public employee is liable for failure to . . . provide police protection service or, if police protection service is provided, for failure to provide

sufficient police protection service."   City Defendants' Motion to Dismiss the ninth and twentieth causes of action is **GRANTED**.

### E. Bane Act

Plaintiff's seventh and eighteenth causes of action are for violations of the Bane Act by the City and the Officers, respectively.  (TAC 7, 11).  "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation[,] or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law."  *Cornell v. City and Cnty. of San Francisco*, 17 Cal.App.5th 766, 791–92 (2017) (quoting Cal. Civ. Code § 52.1).  Violations of federal and California constitutional and statutory rights are all cognizable under the Bane Act.  *See* Cal. Civ. Code § 52.1(c) (a violation occurs when the "exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with").  The Ninth Circuit has held "the Bane Act does not require the 'threat, intimidation[,] or coercion' element of the claim to be transactionally independent from the constitutional violation alleged" so long as the claimant shows the defendant had a "specific intent" to commit the constitutional violation.  *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).  To show specific intent, a plaintiff must satisfy two requirements.  First, the right at issue must be "clearly delineated and plainly applicable under the circumstances of the case[.]"  *Cornell*, 17 Cal.App.5th at 803.  Second, the defendant must have "commit[ted] the act in question with the particular purpose of depriving" the victim of his enjoyment of that right.  *Id.*  The specific intent requirement "is satisfied where the defendant . . . acted with '[r]eckless disregard of the right at issue.'"  *Est. of Serna v. Cnty. of San Diego*, 2022 WL 827123, at *8 (S.D. Cal. Mar. 18, 2022) (quoting *Cornell*, 17 Cal.App.5th at 804) (alteration in original).

Plaintiff has not stated a claim under any of his federal or state law causes of action.  As such, he cannot maintain a Bane Act claim as to those rights.  *See Wexler v. City of San*

*Diego*, 2024 WL 4668152, at *13 (S.D. Cal. Nov. 4, 2024), *appeal dismissed sub nom. Wexler v. City of San Diego*, 2024 WL 5457974 (9th Cir. Dec. 23, 2024) ("As discussed above, the Court finds that Plaintiff fails to state a § 1983 claim with respect to his free exercise, equal protection, and procedural due process rights.  Accordingly, Plaintiff's alleged Bane Act violations as to those rights are dismissed.").  Plaintiff also has not described—nor do the circumstances of the case indicate—any other relevant rights. Accordingly, the seventh and eighteenth causes of action are **DISMISSED**.

**F. Punitive Damages**

Plaintiff seeks to recover punitive damages from the Officers.  (TAC 16).  City Defendants argue that the punitive damages request should be struck from the TAC because Plaintiff fails to state any cause of action which could support a claim for punitive damages. (Defs.' Mot. 18–19).

"California law governs [a] [p]laintiff's substantive claim for punitive damages under California Civil Code § 3294."  *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 406 (C.D. Cal. 2005).  Under California law, a plaintiff must plead that the defendant "engaged in 'oppression, fraud, or malice.'  Malice is conduct intended 'to cause injury to the plaintiff' or 'despicable conduct' carried out 'with a willful and conscious disregard of the rights or safety of others.'"  *Terpin v. AT and T Mobility LLC*, 118 F.4th 1102, 1112 (9th Cir. 2024) (first quoting Cal. Civ. Code § 3294(a); and then quoting Cal. Civ. Code § 3294(c)(1)).

However, "the Federal Rules of Civil Procedure govern the punitive damages claim procedurally with respect to the adequacy of the pleadings."  *Id.*; *see also Clark v. Allstate Ins. Co.*, 106 F.Supp.2d 1016, 1018 (S.D. Cal. 2010) ("Where state law directly conflicts with applicable provisions of the Federal Rules of Civil Procedure, federal courts must apply the Federal Rules—not state law."); *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000) ("[A] federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction.").  Under the less demanding federal pleading standard,

Plaintiff's TAC needs only "include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." *Clark*, 106 F.Supp.2d at 1019; Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Despite all causes of action being dismissed for lack of factual support, Plaintiff has sufficiently alleged that the Officers acted with "malice, oppression, fraud, or reckless disregard." (TAC 16). Accordingly, the Court **DENIES** City Defendants' Motion to Strike Plaintiff's request for punitive damages.

### G. Leave to Amend

When a court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "[T]his policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Liberality in granting pro se litigants leave to amend is especially important. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("We have noted frequently that the 'rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant. Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel.'"). A court should grant leave to amend where there is no (1) "undue delay," (2) "bad faith or dilatory motive," (3) "undue prejudice to the opposing party" if amendment were allowed, or (4) "futility" in allowing amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1056 (9th Cir. 2007).

Because *Monell* is the only theory through which a local government can be held liable under § 1983, Plaintiff's remaining § 1983 causes of action against the City—claims three through six—are dismissed without leave to amend. *See Black*, 562 F.Supp.3d at 834. The pleading insufficiencies of the remaining causes of action are dismissed with leave to amend since they may be curable through additional factual content. *Lopez*, 203

F.3d at 1135 ("[The] pro se litigant must be given notice of the deficiencies in his complaint and an opportunity to amend the complaint to overcome the deficiency unless it clearly appears from the complaint that the deficiency cannot be overcome by amendment." (internal quotation marks omitted)) (Rymer, J. concurring).

## IV.    CONCLUSION AND ORDER

For the reasons explained above, the Court **GRANTS** City Defendants' Motion to Dismiss causes of action three through six without leave to amend, **GRANTS** City Defendants' Motion to Dismiss the remaining causes of action in the TAC with leave to amend, and **DENIES** City Defendants' Motion to Strike Plaintiff's request for punitive damages.  Within forty-five (45) days of the date of this Order, Plaintiff may file a Fourth Amended Complaint.

**IT IS SO ORDERED.**

Dated:  August 5, 2025

Hon. Dana M. Sabraw
United States District Judge

25-cv-00813-DMS-KSC